The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. 2:10-cr-00069-RAJ |
|---|---|
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| DONDANOVA DOMINIQUE LEWIS, | |
| Defendant. | |

This matter comes before the Court on Defendant Dondanova Dominique Lewis'
motion for compassionate release.  Dkt. 63.  Having thoroughly considered the parties'
briefing and the relevant record, the Court finds oral argument unnecessary and hereby
**GRANTS** the motion for the reasons explained herein.

## I. BACKGROUND

Mr. Lewis is serving his current sentence after pleading guilty to two counts of
Possession of Cocaine Base in the Form of Crack Cocaine with Intent to Distribute and
one count of Felon in Possession of a Firearm as an Armed Career Criminal.  Dkt. 30.
Mr. Lewis' convictions are based on events that occurred between May and July of 2006.

On July 26, 2010, Mr. Lewis entered pleas of guilty to three of the four charges
contained in the indictment.  Dkt. 28, 30.  Specifically, Mr. Lewis pled guilty to two
counts of possession of cocaine base with the intent to distribute for the drugs he

ORDER - 1

possessed on May 22 and July 7, 2006, and possession of a firearm as an armed career criminal for the firearm recovered from him on July 7, 2006.  Dkt. 28, 30.

Mr. Lewis' plea agreement reflected a global resolution of the parties with respect to the cases then pending against him in state and federal courts.  Dkt. 30.  In addition to pleading guilty to the three federal charges, Mr. Lewis agreed to enter a guilty plea in King County Superior Court to a reduced charge of assault in the second degree with a firearm enhancement, with an agreed sentence of 120 months, related to the June 22, 2006, shooting.  Dkt. 30.

As part of the plea agreement, Mr. Lewis acknowledged that based on his criminal history, he qualified as an armed career criminal under 18 U.S.C. § 924(e)(2), a fact that subjected him to a mandatory minimum fifteen-year prison sentence for the firearm count.  Dkt. 30.  For this and the two drug offenses, the parties agreed to recommend that the Court impose a sentence of 188 months of imprisonment, and to request that the federal sentence be served concurrent with the sentence to be imposed in King County Superior Court for the second degree assault charge.  Dkt. 30.  The parties further agreed to recommend that the sentence for the federal offenses be imposed consecutive to the 84-month state sentence that Mr. Lewis was already serving following his 2007 convictions for vehicular assault, felony hit and run, and hit and run attended.  Dkt. 30.

On December 1, 2010, the Court followed the parties' joint recommendation and sentenced Mr. Lewis to 188 months of imprisonment on each of the three counts to which he pled guilty, to run concurrent with each other and with the 120-month sentence imposed by the state court judge for the assault in the second degree charge.  The concurrent 188-month sentences were imposed consecutive to the 84-month state sentence.  Dkt. 42.

Mr. Lewis is currently serving his sentence at FCI Herlong and has a projected release date of August 4, 2024.

On July 17, 2020, Mr. Lewis filed a motion for compassionate release requesting the Court reduce his custodial sentence to time served, with the remainder

converted to home confinement and/or participation in a residential reentry center program. Dkt. 63. Mr. Lewis moves for compassionate release under 18 U.S.C. § 3582(c)(1), arguing he presents extraordinary and compelling reasons for release based on his medical condition, age, and race, asserting he is at heightened risk of suffering complications should he become infected with coronavirus-19 (COVID-19) at FCI Herlong. Mr. Lewis is a 43-year-old African American man who has sickle cell trait, which he contends places him at high risk of serious illness or death if he were to contract the virus. Dkt. 63.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Lewis' motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended,

ORDER - 3

§ 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Lewis' motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

///

///

ORDER - 4

**B.      Exhaustion of Administrative Remedies**

It is undisputed that Mr. Lewis has met the exhaustion requirement and that his request to this Court is timely.  On June 11, 2020, Mr. Lewis submitted a request for compassionate release to Paul Thompson, the warden of FCI Herlong.  Dkt. 63, Ex. 4. Warden Thompson denied the request on June 22, 2020.  Dkt. 63, Ex. 5.

As the statutorily required 30-day period has expired, Mr. Lewis' motion is properly before the Court.

**C.      Extraordinary and Compelling Circumstances**

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Lewis' term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…

ORDER - 5

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and

(3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

 (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Lewis argues he has met his burden of showing extraordinary and compelling circumstances exist for the Court to grant his motion for compassionate release. He has provided evidence through medical records that he suffers from sickle cell trait, an inherited condition that is described by the Centers for Disease Control and Prevention (CDC) as having inherited one sickle cell gene and one normal gene. Mr. Lewis admits he does not suffer the severe symptoms of sickle cell disease. Dkt. 64, Ex. 2-3. While Mr. Lewis concedes the sickle cell trait is not, like sickle cell disease, listed among those conditions that place sufferers at greatest risk from COVID-19, he indicates its consequences have led other district courts to consider it a factor that is sufficiently extraordinary and compelling to warrant compassionate release. Dkt. 63.

While Mr. Lewis concedes he is not in the age group most susceptible to death or complications from COVID-19, he points to data from the CDC which shows that he is in an age group where the risk of death starts to increase dramatically, and hospitalization rates increase. He argues his race and gender also make him more vulnerable to the consequences of COVID-19. Dkt. 63.

Mr. Lewis argues he has served much of his sentence and the relief he seeks is modest considering his current August 2024 release date.  Further, Mr. Lewis indicates that had his previous counsel timely filed a petition pursuant to 28 U.S.C. § 2255 presenting a claim for relief under *United States v. Johnson*, 135 S. Ct. 2251 (2015), such petition may have proven successful and he would have already been released from custody at this time.  Dkt. 63.  Mr. Lewis argues that because he was deprived of the opportunity to petition for resentencing, which if granted would have resulted in a substantially lower sentence due to a change in the law, this factor also presents an extraordinary and compelling reason for the Court to reduce his sentence.  Dkt. 73.

The government responds that because Mr. Lewis has not presented extraordinary and compelling reasons for a reduction in sentence, and because he continues to present a danger to the community, his motion for compassionate release should be denied.  The government indicates that while Mr. Lewis has sickle cell trait, that condition, unlike sickle cell disease, does not render him particularly vulnerable to COVID-19.  Dkt. 70.

The government indicates that at the time of preparation of the Presentence Report, Mr. Lewis described himself as healthy.  PSR ¶ 207. The medical records from the Bureau of Prisons (BOP) reflect that Mr. Lewis has been diagnosed with sickle cell trait, and that according to the CDC, individuals with sickle cell trait do not have any of the symptoms of sickle cell disease, but they can pass the trait on to their children.  The government indicates Mr. Lewis has failed to provide evidence of any other health conditions that would render him particularly susceptible to COVID-19, and there is nothing else of note contained in the BOP medical records.  Dkt. 70.

The government contends that at age 43, Mr. Lewis is nowhere near the age range recognized by the CDC as placing individuals at higher risk of suffering complications after contracting COVID-19, and indicates that while there is no doubt that African Americans and other minorities have suffered greater consequences from this virus, that result is not based on the fact of race alone, but rather on social and health inequities. Dkt. 70.

1     The government asserts Mr. Lewis' reliance on the general concerns about
2  possible exposure to COVID-19 while in prison does not meet the criteria of
3  extraordinary and compelling reasons for a reduction in sentence as set forth in the
4  Sentencing Commission's policy statement on compassionate release, setting forth the
5  efforts the BOP has taken to prevent the spread of the virus pursuant to guidance from the
6  CDC and other health experts.  Dkt. 70.

7     The government argues that Mr. Lewis' claim that a "clerical error" resulted in an
8  untimely filing of a motion pursuant to 28 U.S.C. § 2255 does not present an
9  extraordinary and compelling reason to grant relief, and that recent Supreme Court cases
10  suggest he is not entitled to the relief he indicates he should have been able to seek.  Dkt.
11  70.  Mr. Lewis' § 2255 motion remains pending before this Court.  *See Lewis v. United*
12  *States*, 2:19-cv-01461-RAJ.

13     The government further argues that because Mr. Lewis is serving a sentence that
14  the parties jointly agreed to recommend addressing his state and federal offenses, and he
15  has offered no reason that meets the statutory standard, his motion for compassionate
16  release should be denied.  Dkt. 70.

17     When an inmate has health conditions that make them significantly more
18  vulnerable to COVID-19, that may constitute an extraordinary and compelling
19  circumstance.  *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp.
20  3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No.
21  CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

22     Mr. Lewis concedes carrying the sickle cell trait is not on the list of conditions that
23  have been identified as putting sufferers at the greatest risk from COVID-19.  Dkt. 73, p.
24  2.  His is not a case of first impression, however, on this issue.  Other courts have noted
25  the risk a person with the sickle cell trait faces if infected with the virus.  *United States v.*
26  *Thompson,* No. 92-30065-001, 2020 U.S. Dist. LEXIS 111416 (C.D. Ill. June 25, 2020;
27  *United States v. Harden*, Civil Action No. 16-cr-00218-WJM, 2020 U.S. Dist. LEXIS
28  100752 (D. Colo. June 8, 2020).

ORDER - 8

1    Further, the government concedes there are some unquestioned physical

2 consequences that can befall those possessing the sickle cell trait, and that sickle cell

3 anemia is one of the conditions that puts people at the greatest risk of severe illness of

4 death from COVID-19.

5    Likewise, the Court must consider Mr. Lewis' age.  According to the CDC the

6 death rate for those aged 35-44 is nearly triple that of those 25-34 and the rate again

7 triples for those aged 45-54.  At age 43 and a birthday on September 23, 2020 he is on

8 the bubble of being in the higher risk categories.

9    Mr. Lewis additionally raises his race as a factor to consider.  He cites statistical

10 references suggesting that African American males die at drastically higher rates from

11 COVID-19 than other groups. *See* Tiffany Ford, "Race Gaps in COVID-19 Deaths Are

12 Even Bigger Than They Appear," The Brookings Institute, June 16, 2020, Dkt. 73.  Mr.

13 Lewis acknowledges that the reason for the disparity is unclear and does not suggest

14 otherwise.  However, when considering the fact of his having the sickle cell trait,

15 combined with the other factors noted above, the Court concludes, as the court did in

16 *Thompson, Id.*, that it is conceivable that a person with his combined circumstances may

17 experience serious complications if diagnosed with COVID-19.  The Court thereby

18 concludes that his unique circumstances justify an extraordinary and compassionate

19 release.

20    In addition to the foregoing is Mr. Lewis' argument based upon the Supreme

21 Court's holding in *Johnson v. United States*, 135 S. Ct. 2251 (2015).  Without restating

22 the conflicting positions on this point, what is clear is that but for what appears to be a

23 clerical error, Mr. Lewis would have received a far shorter sentence because he would

24 not have been subjected to the enhancements that clearly impacted the sentence imposed

25 or what he would face if he were sentenced today.

26    While some courts have held, as argued by the government, that the Sentencing

27 Commission's policy statement on compassionate release remains controlling in the wake

28 of the First Step Act, this Court agrees with the position taken by numerous courts that

the "old policy statement provides helpful guidance, [but]…does not constrain [a court's]
independent assessment of whether 'extraordinary and compelling reasons' warrant a
sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States
v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,*
2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043
(RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No.
2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

While the certainty is unknown, if a *Johnson* motion had been filed, Mr. Lewis
would likely have had his conviction on Count 4 vacated and received a sentence far less
than that received.  And, more probably than not, been released from prison before
COVID-19 reached the United States.

Last, the Court must point out that Mr. Lewis has served a significant amount of
time considering the actual sentence imposed.  He has served nearly 109 months of a
188-month sentence.  This is a significant term and warrants this fact being considered
whether to grant the motion or not.

**D.  Safety of Others**

The Court next turns to whether Mr. Lewis presents a danger to the safety of any
other person or to the community. *See* U.S.S.G. §1B1.13(2).  In making this
determination, the Court looks to the nature and circumstances of the underlying offense,
the weight of evidence against him, his history and characteristics, and the nature and
seriousness of the danger his release would pose to any person or the community. 18
U.S.C. §3142(g).

Mr. Lewis asserts he would not pose a danger to the community if released
immediately, and that he can be safely supervised in the community through home
confinement or participation in a residential reentry program.  He points to evidence he
has had no serious infractions since his incarceration, has taken advantage of available
educational programs, and has obtained his GED. Dkt. 63, Ex. 6.  While acknowledging

the seriousness of his offenses, he argues he was a much younger man then and has completed a large portion of his sentence, over 10 years of his 188-month sentence.  He indicates he has the support of his family and will live with his sister if released.  Dkt. 63.

The government contends that given Mr. Lewis' lengthy and violent criminal history, which includes crimes involving firearms, he would be a danger to others if released, and could not be adequately supervised to mitigate the risk to the community.  Dkt. 70.

The Court agrees with Mr. Lewis that the facts and circumstances of the last 10 years strongly suggest he will no longer be a danger to the community.  While it is undisputed that Mr. Lewis has several serious prior felony convictions, his current incarceration has been the longest he has served in prison, and as noted above, his custodial time has been productive.

The United States Probation Office has completed a release investigation and confirmed that if released from custody, he has a stable release plan with an individual willing to provide him with financial and emotional support.  Probation also acknowledges that the conditions imposed in his original judgment are appropriate and sufficient.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Lewis' motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must consider relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C.  § 3582(c)(1)(A).  The Court has considered each of these factors and concludes that compassionate release is warranted.

Mr. Lewis posits that when this Court imposed its 188-month sentence, the Court didn't contemplate the present conditions of Mr. Lewis' confinement, where he faces a significant risk of exposure to a disease that could either seriously harm him or even kill him.  Dkt. 63.

The government argues that the conclusion that Mr. Lewis has not presented extraordinary and compelling reasons to reduce his sentence is further supported by the application of the factors contained in 18 U.S.C. § 3553(a), which have not changed since the Court imposed Mr. Lewis' original sentence, and that there is nothing in the weighing of those factors that call for a reduction in Mr. Lewis' sentence.  Dkt. 70.

As noted above, the defendant has served more than 10 years of a 15-year sentence.  With the conditions of supervision previously imposed, the Court is satisfied that this outcome will promote respect for the law, provide just punishment for the underlying offenses and avoid his unwarranted risk of infection from COVID-19

**F.  Consistency with Policy Statement**

Last, the Court must determine whether Mr. Lewis' compassionate release would be consistent with the relevant policy statement.  *See* U.S.S.G. § 1B1.13(3).  The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court has done so with the detail contained in this order.

**G.  Additional Term of Supervised Release**

18 U.S.C. § 3582(c)(1)(A) authorizes a reduction in sentence.  It also permits the Court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  The Court finds that an additional term of supervised release is unnecessary or warranted. However, the Court finds that as an additional condition of the supervised release previously imposed, Mr. Lewis shall serve the first twelve months of his term of

supervised release on home confinement, with the same standard and any special conditions of the original term of supervised release.

### III.  CONCLUSION

For the foregoing reasons, Defendant Dondanova Dominique Lewis' motion for compassionate release is **GRANTED**.  The Court hereby **ORDERS** that Mr. Lewis' term of imprisonment is reduced to time served.  The Court **ORDERS** the Bureau of Prisons to release Mr. Lewis no later than 72 hours after entry of this order for placement according to the release plan approved by the United States Probation Office where he will be supervised.  Mr. Lewis shall remain in custody, however, until testing can confirm that he is negative for the COVID-19 virus.  The Court further **ORDERS** that in the interest of protecting the community, Mr. Lewis shall remain in quarantine for fourteen days after release to ensure that he has not contracted the virus, especially since he will be traveling from a state where the virus exists in high numbers.  Mr. Lewis is **ORDERED** to contact the United States Probation Office within 24 hours of his release and follow its instructions.

The Court further **ORDERS** that as an additional condition of supervised release, Mr. Lewis shall serve the first twelve months of his term of supervised release in home confinement subject to the standard and special conditions of the original term of supervised release.  He shall participate in the location monitoring program with Active Global Positioning Satellite technology for a period of 12 months.  He is restricted to his residence at all times except for employment, religious services, medical, legal reasons, or as otherwise approved by the location monitoring specialist.  Mr. Lewis shall abide by all program requirements, and must contribute towards the costs of the services, to the extent financially able, as determined by the location monitoring specialist.

During Mr. Lewis' 14-day quarantine period, the Court imposes the following condition:  He shall participate in the location monitoring program with Global Positioning Satellite technology via mobile application. He is restricted to his residence at

1    all times except for employment, religious services, medical, legal reasons, or as

2    otherwise approved by the location monitoring specialist.  He shall abide by all program

3    requirements, and must contribute towards the costs of the services, to the extent

4    financially able, as determined by the location monitoring specialist.

5

6          DATED this 28th day of August, 2020.

7

8

9

10         The Honorable Richard A. Jones

           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 14